THOMAS J. BOIS, II (Bar No. 110250)
JAMES C. MACDONALD (Bar No. 175760)
BOIS & MACDONALD
2030 Main Street, Suite 660
Irvine, CA 92614
Telephone: (949) 660-0011
Facsimile: (949) 660-0022
E-mail: tbois@boismac.com;
jmacdonald@boismac.com

Attorneys for Plaintiff
SLOW RIVER, LLC, a California Limited
Liability Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLOW RIVER, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>Estate of JAMES JONES (Deceased) an individual dba JIFFY FOOD STORE; Estate of DOUGLAS CARPENTER (Deceased) an individual dba JIFFY FOOD STORE; E-Z SERVE PETROLEUM MARKETING COMPANY, a forfeited Delaware corporation; E-Z SERVE PETROLEUM MARKETING COMPANY OF CALIFORNIA, a suspended California corporation; RESTRUCTURE PETROLEUM MARKETING SERVICES OF CALIFORNIA, INC., a suspended California corporation; ERSIN AKSOY an individual; BAY AREA/DIABLO PETROLEUM, CO., a California corporation doing business as GOLDEN GATE PETROLEUM COMPANY; and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO.: 2:20-cv-6088**<br><br>**COMPLAINT FOR:**<br><br>**(1) STRICT LIABILITY (RCRA-42 U.S.C. § 6972);**<br>**(2) (CAL HEALTH AND SAFETY CODE HWCL– §25100 ET SEQ.);**<br>**(3) CONTINUING PUBLIC NUISANCE;**<br>**(4) CONTINUING PRIVATE NUISANCE;**<br>**(5) NUISANCE PER SE;**<br>**(6) BREACH OF CONTRACT/LEASE;**<br>**(7) NEGLIGENT INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;**<br>**(8) INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE;**<br>**(9) UNFAIR COMPETITION (CAL. BUS. & PROF CODE § 17200)**<br>**(10) STATUTORY FAILURE TO DISCLOSE (CAL. HEALTH AND SAFETY CODE § 25359.7);**<br>**(11) EQUITABLE INDEMNITY;**<br>**(12) DECLARATORY RELIEF (STATE AND FEDERAL)**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

Plaintiff SLOW RIVER, LLC, a California Limited Liability Company, (hereinafter "Plaintiff") alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1.     This court has jurisdiction over this subject matter because federal questions exist pursuant to 42 U.S.C. § 6972(b)(2)(A) ("RCRA").

2.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the claims arise at properties located at 995 Los Osos Valley Road, Los Osos, California ("Impacted Site").  The Impacted Site is located within the boundaries of this court's jurisdiction.

3.     This court has jurisdiction to hear the state law and common law claims brought because they arise out of the same common nucleus of facts, acts and occurrences as the federal questions presented. Furthermore, considerations of judicial economy, convenience and fairness to the parties require the claims be tried together in one jurisdictional proceeding.

## FACTUAL ALLEGATIONS

4.     JAMES JONES is an individual that did business as JIFFY FOOD STORE and is deceased with an estate established after his death whom did business and operated in the State of California and owned or operated on the Impacted Site from approximately 1971 through 1986.

5.     DOUGLAS CARPENTER is an individual that did business as JIFFY FOOD STORE and is deceased with an estate established after his death whom did business and operated in the State of California and owned or operated on the Impacted Site from approximately 1971 through 1986.

6.     E-Z SERVE PETROLEUM MARKETING COMPANY is a forfeited Delaware corporation that did business and operated in the State of California and owned or operated on the Impacted Site from approximately 1986-1992.

7.     E-Z SERVE PETROLEUM MARKETING COMPANY OF CALIFORNIA is a suspended California corporation that did business and operated in

1  the State of California and owned or operated on the Impacted Site from approximately

2  1986-1992.

3      8.    RESTRUCTURE PETROLEUM MARKETING SERVICES OF

4  CALIFORNIA, INC. ("Restructure") is a suspended California corporation that did

5  business and operated in the State of California and owned or operated on the Impacted

6  Site from approximately 1986-1992.

7      9.    ERSIN AKSOY is an individual that did business and operated in the

8  State of California and owned or operated on the Impacted Site from approximately

9  1993-1997.

10     10.   BAY AREA/DIABLO PETROLEUM, CO. is a California corporation

11  doing business as GOLDEN GATE PETROLEUM COMPANY that did business and

12  operated in the State of California, and owned the Impacted Site from at least

13  approximately 1997 through 2007, and operated on the Impacted Site from 1997

14  through the present (hereinafter referred to as "Bay Area/Diablo").

15     11.   Plaintiff is unaware of the true names and capacities, whether individual,

16  associate, and corporate or otherwise, of Defendants Does 1-10, and therefore sues

17  such Defendants by fictitious name. Plaintiff alleges that Does 1-10, and each of them,

18  were doing business within the State of California during the relevant time frame.

19  Plaintiff will seek leave of this Court to amend the Complaint when the identities of

20  these persons or entities are ascertained.

21     12.   Plaintiff is informed and believes and thereon alleges at all relevant times

22  herein mentioned, each of the Defendants were the agent, representative, principal,

23  servant, employee, partner, alter ego, joint venturer, successor-in-interest, assistant,

24  and/or consultant of each and every remaining Defendant, and as such, was at all times

25  acting within the course, scope, purpose and authority of such agency, partnership,

26  employment and/or venture, and with the express or implied knowledge, permission,

27  authority, approval, ratification and consent of the remaining Defendants, whether said

28  authority was actual, ostensible, or apparent; and each Defendant was negligent and

1  reckless in the selection, hiring, and supervision of each and every other Defendant as

2  an agent, representative, principal, servant, employee, partner, alter ego, joint venturer,

3  successor-in-interest, assistant, and/or consultant.   Plaintiff at all material times

4  beginning in 2007 has been the fee owner of the Impacted Site.

5      13.    Plaintiff alleges that since at least 1971 the Defendants, and each of them,

6  stored and used, allowed the storage and use, or authorized the storage and use of:

7  liquid, solid and hazardous wastes, including but not limited to:

8  waste oils; motor oils;  oil; petroleum hydrocarbons; gasoline; diesel; benzene, toluene,

9  ethylbenzene, xylenes ("BTEX"); methyl-tertiary-butyl-ether ("MTBE"); and tertiary

10  butyl alcohol ("TBA") (collectively "Hazardous Substances" and/or "Hazardous

11  Wastes") as liquid and hazardous wastes and other contaminants in numerous places.

12  These places included  but were not limited to: aboveground drums; barrels and other

13  storage containers; aboveground storage tanks; underground storage tanks;

14  aboveground pipe lines; underground pipe lines; dispensing systems; sumps; surface

15  impoundments; surface gutters; surface troughs; clarifiers; slab drains; sewer laterals;

16  and holding basins and other facility receptacles.   Plaintiffs further allege these

17  Hazardous Substances and Hazardous Wastes releases are now present on the Impacted

18  Site in soil, soil vapor and/or groundwater. Plaintiffs further allege the Defendants

19  owned and/or operated a treatment, storage and/or disposal facility as defined by

20  RCRA in performing these operations.

21      14.    Plaintiff alleges on occasion, the waste storage containers, devices, and

22  other improvements allowed sudden and accidental leaking, discharging and disposing

23  of the liquid, solid and hazardous wastes and other contaminants stored in them into

24  the soil and groundwater at and beneath the Impacted Site and extending beneath

25  surrounding areas. Since the date the waste storage containers, devices and other

26  improvements began to suddenly and accidentally leak, discharge and dispose of the

27  liquid, solid and hazardous wastes and other contaminants stored in them, said wastes

28  have been disposed, discharged, released, spilled, leaked, leached and/or migrated into

32718                         -4-

1  the soil and groundwater at and beneath the Impacted Site.  Thereafter, continuing to

2  the present, said liquid, solid, Hazardous Substances and Hazardous Wastes from the

3  Impacted Site have leached, migrated and caused damage, including the contamination

4  of the soil and groundwater at, beneath and adjacent to the Impacted Site.

5       15.    Plaintiff alleges that the Defendants have handled, stored, treated,

6  transported and/or disposed of Hazardous Substances and Hazardous Wastes at the

7  Impacted Site in a manner which caused those wastes to suddenly and accidentally

8  contaminate the soil and groundwater at, beneath and adjacent to the Impacted Site and

9  thus caused an imminent and substantial endangerment to health or the environment.

10      16.    In the most recent round of groundwater testing performed by the

11  Defendants, benzene contamination was detected as high as 2300 micrograms per liter

12  ("ug/l") (also referred to as parts per billion ("ppb")).   These concentrations

13  substantially exceeding both the federal and California state governments have set

14  Maximum Contaminant Levels ("MCL's") and/or cleanup goals for benzene (almost

15  800 times the Federal MCL, and 2300 times the State MCL and/or cleanup goal).

16  These MCL and/or cleanup goal standards establish permissible concentration levels

17  for contaminants occurring in drinking water to prevent cancer exposure. The

18  California MCL and/or cleanup goal for benzene is 1 ppb, and the Federal MCL is 5

19  ppb. Based on these carcinogenic contamination concentrations, Plaintiffs allege on

20  information and belief that Benzene and BTEX contamination located on the Impacted

21  Site released by the Defendants will be identified by the Regional Board as chemicals

22  of concern that it will direct be further investigated and remediated. Plaintiffs further

23  allege these Petroleum Wastes may potentially be drawn into the remediation system

24  and/or underneath and into Plaintiffs' buildings when and if soil and/or groundwater

25  remediation is performed.

26      17.    Plaintiff alleges in 2003 Bay Area/Diablo Defendants misrepresented

27  facts to the State Water Resources Control Board ("State Board") concerning the

28  source of pollution present at the Impacted Site.  This misrepresentation ultimately

1   resulted in a denial of the ability to access funds available from the State Board to

2   investigate and remediate the Impacted Site in 2004.   Plaintiff alleges it had no

3   knowledge of these activities at the time of purchase of the Impacted Site and did not

4   learn of these facts before at least March 2018.

5          18.    On June 4, 2004 Defendants Restructure and Bay Area/Diablo were

6   designated as Responsible Parties by the Central Coast Regional Water Quality Control

7   Board ("Regional Board") for the pollution present on the Impacted Site and directed

8   to investigate and remediate pollution present on the Impacted Site.  Plaintiff alleges it

9   had no knowledge of these activities at the time of purchase of the Impacted Site and

10  did not learn of these facts before at least March 2018.

11         19.    Plaintiff purchased the Impacted Site from Bay Area/Diablo and/or Does

12  1-5 (hereinafter referred to as "Bay Area/Diablo Defendants") in 2007.

13         20.    Plaintiff alleges Bay Area/Diablo Defendants had owned and operated

14  many other polluted properties at the time of purchase.  Plaintiff further alleges the Bay

15  Area/Diablo Defendants that sold the Impacted Site had also operated at the Impacted

16  Site for at least ten (10) years and performed the operations that released Hazardous

17  Substances and Hazardous Wastes onto the Impacted Site.  Therefore, in addition to

18  knowledge gained from other sites where Bay Area/Diablo Defendants' operations had

19  polluted other properties, they possessed at least ten (10) years of operational and

20  ownership history concerning the Impacted Site at the time of Plaintiff's purchase.

21  Furthermore, as demonstrated by the application submitted by the Bay Area/Diablo

22  Defendants to the State Board in 2003, and the failure to comply with directives from

23  the Regional Board to further investigate and remediate the Impacted Site, Bay

24  Area/Diablo knew significant pollution existed on the Impacted Site at the time of

25  purchase that had not been remediated.  However, such defendants purposely refused

26  to disclose this information to Plaintiff as part of the sale of the Impacted Site, and in

27  fact purposely misrepresented the amount and scope pf contamination present to

28  Plaintiff.

21.     As a result, Plaintiff alleges that Bay Area/Diablo Defendants had both general and specific prior expertise and experience in operating on, causing pollution to and/or selling properties such as the Impacted Site.  Such expertise and experience should have allowed Bay Area/Diablo Defendants to determine the nature and extent of pollution that existed on the Impacted Site at the time of sale to provide notice of the same to Plaintiff.  Plaintiff alleges it in contrast had no significant prior experience and expertise in acquiring polluted properties.  Plaintiff further alleges under information and belief that no discount in the purchase price of the Impacted Site was factored into the sale price for the Impacted Site relating to the then existing environmental pollution on the Impacted Site at the time of purchase.

22.     As a result of the facts alleged above in Paragraphs 17 through 21, Plaintiff alleges Bay Area/Diablo Defendants were in a superior position of knowledge concerning the nature, extent, impacts and legal ramifications of the existing pollution at the Impacted Site at the time of the purchase of the Impacted Site was superior to Plaintiff. Plaintiff further alleges these defendants were in a superior bargaining position compared to Plaintiff when negotiating and drafting any environmental allocation provisions as part of the purchase and/or the Lease.

23.     After Plaintiff's purchase Plaintiff then leased the Impacted Property to Bay Area/Diablo Defendants without any interruptions in the operations.  Pursuant to the Lease provisions remediation of any Hazardous Substances or Hazardous Wastes is the sole responsibility of Bay Area/Diablo Defendants. Bay Area/Diablo Defendants are also responsible to maintain the Premises in compliance with all laws (Lease, Section 4.2), responsible and liable for any Hazardous Substances at the Impacted Property (as specifically defined in the Lease, including any "PreExisting Environmental Condition" (Lease, Section 4.4(c )). Moreover, the Lease, which was drafted by Bay Area/Diablo Defendants, contains a representation by Bay Area/Diablo Defendants that "…based on the environmental information in the files of Tenant and Original Landlord [i.e. Bay Area/Diablo], there are no known Pre-Existing

32718

Environmental Conditions on the date of this Lease, and based on such information, the possibility of such a Pre-Existing Environmental Condition is remote…". (Lease, Section 4.4(d)).

24.     On July 25, 2016 the Bay Area/Diablo Defendants were issued a second directive letter by the Regional Board to perform further investigation of the pollution present on the Impacted Site.  The Bay Area/Diablo Defendants refused to comply with this directive letter. Plaintiff alleges it had no knowledge, and no reason to reasonably know of, the issuance of this letter, or the impact of the activities described above at the time of purchase of the Impacted Site,  and did not learn of facts that would have put it on notice of its claims until at least March of 2018.

25.     Plaintiff alleges the Bay Area/Diablo Defendants purposefully withheld the activities that have given rises to these causes of action, and the prior July 26, 2016 Regional Board notice from Plaintiff, and refused to disclose to Plaintiff that it had received this directive letter from the Regional Board.  Plaintiff was not separately sent this notice by the Regional Board or any other entity and did not know that the letter had been issued.

26.     Plaintiff alleges it did not become aware of the wrongful actions engaged in by the Bay Area/Diablo Defendants, or the presence of significant pollution or Hazardous Substances or Hazardous Wastes on the Impacted Site, until Plaintiff attempted to sell the Impacted Site in 2018.  At that time a potential buyer of the Impacted Site commissioned a report which identified potential environmental concerns for the Site dated March 13, 2018, which was provided to Plaintiff shortly thereafter.  Plaintiff alleges its receipt of this report was the first date on which Plaintiff became aware that any significant issues existed concerning the pollution that had been released by Defendants at the Site.  Plaintiff also alleges that because of the presence of the pollution on the Site as identified in the March 13, 2018 report, the potential buyer for the Impacted Site ultimately refused to consummate the purchase of the Impacted Site.

27.     Plaintiff alleges it acted timely after it was put on notice of the potential presence of pollution on the Impacted Site.  On or about September 27, 2018 Plaintiff issued a Notice of Intent to Sue to Defendants under the applicable federal statutes relating to the Hazardous Substance and Hazardous Wastes detected on the Impacted Site.  Defendants have failed to respond to this notice.  Plaintiff alleges it also issued a second May 7, 2019 30 Day Notice to Bay Area/Diablo relating to its Lease obligations. Defendants have also failed to respond to this notice.

28.     Plaintiff alleges on or about February 15, 2019 Bay Area/Diablo was again specifically provided notice that it had been named as a Responsible Party by the Regional Board and directed to investigate the pollution contamination present on or beneath the Impacted Site. As a result, on or before July 20, 2019, Bay Area/Diablo was directed by the Regional Board to implement the subsurface investigation Work Plan submitted by Plaintiff to the Regional Board on February 26, 2019 (and subsequently approved by the Regional Board on March 21, 2019).  Plaintiff has obtained an extension for the implementation of that Work Plan until on or before October 20, 2019.

29.     Plaintiff alleges that the Bay Area/Diablo Defendants actively concealed the presence of pollution on the Impacted Site by: (1) misrepresenting that pollution was not present on the Impacted Site before the purchase of the Impacted Site and instead representing "the possibility of such a Pre-Existing Environmental Condition is remote"; (2) failing to disclose in writing before purchase that such defendants had been ordered to investigate and remediate the pollution then present, but had simply refused to comply with such orders; and (3) refusing to provide notice to Plaintiff of ongoing directives by the Regional Board after purchase directing the Bay Area/Diablo Defendants to investigate and remediate the pollution present on the Impacted Site. Plaintiff further alleges that the Bay Area/ Diablo Defendants engaged in these actions for the specific purpose of concealing information from Plaintiff to prevent Plaintiff from discovering and acting on the pollution present on the Impacted Site.  Plaintiff

1  also alleges that each and every improper action engaged in by the Bay Area/Diablo

2  Defendants since Plaintiff's purchase of the Impacted Site results in the continuous

3  accrual of any causes of action alleged by Plaintiff herein.

4  **FIRST CLAIM FOR RELIEF**

5  **(For Relief under 42 U.S.C. § 6972(a)(1)(B) - "RCRA"**

6  **Against All Defendants)**

7     30.    Plaintiff repeats and realleges the allegations contained in paragraphs 1

8  through 29, inclusive, and incorporates them by reference as though fully set forth.

9     31.    Pursuant to the notification requirements set forth in § 7002 of the Solid

10  Waste Disposal Act, as amended by the Resource Conservation Recovery Act of 1976

11  "RCRA"), 42 U.S.C. § 6972(b)(2)(A), Plaintiff has undertaken to notify all Defendants

12  of its intention to file this lawsuit. This notice was issued more than 90 days before

13  filing of this Complaint and copies of the United States Postal Service return receipts

14  for Defendants that returned their return receipts have been collected and retained to

15  demonstrate Defendants have received notice of Plaintiff's intention to file this lawsuit.

16     32.    As more fully set forth herein above, Defendants were operators and/or

17  owners of various equipment, buildings or other improvements which performed

18  operations at the time of the release or disposal of the contaminants found at the

19  FACILITY which constitute "hazardous waste" as that term is defined by RCRA, 42

20  U.S.C. § 6903(5)(A)(B) and the duly promulgated regulations contained in 40 C.F.R.

21  261 et seq.

22     33.    Defendants, and each of them, were the only persons and/or entities that

23  performed operations and/or handled Hazardous Substances and/or Hazardous Wastes

24  on or near the Impacted Site during the period at least 1971 through present which

25  could, or likely would, have caused the type of pollution resulting from Defendants'

26  operations.  Defendants also had substantial control over the Hazardous Wastes at the

27  time of disposal or were otherwise actively involved in the waste disposal process.

28  The pollutant releases could not, and would not, have occurred but for Defendants'

1  negligent conduct.

2        34.     The releases and/or disposal of Hazardous Wastes at the FACILITY have

3  caused an imminent and/or substantial endangerment to health or the environment, by

4  creating a health risk to: workers on the FACILITY; and/or neighboring properties;

5  and/or groundwater in the area.  This human health risk shall be increased and/or

6  exacerbated in the event workers perform soil excavation at or around the Impacted

7  Site. Furthermore, the vertical and horizontal migration of the Hazardous Wastes

8  released by Defendants potentially endangers the drinking water supplies of a large

9  number of the general public.  This endangerment is evidenced by the fact that the

10  pollution at the FACILITY may have migrated off-site.  Hazardous vapors may also

11  seep from the subsurface into the air space within the structures on the Impacted Site or

12  into the air space of off-site structures to cause imminent and substantial impacts to the

13  ambient air at concentrations in ways potentially harmful to human health.

14  Defendants' failure and/or refusal to take corrective action while the pollution

15  continues to spread puts the public at risk.

16        35.     As a matter of law, Plaintiff is entitled to prosecute and maintain this

17  lawsuit, to obtain injunctive relief compelling FACILITY remediation, directing

18  Defendants to: take action to address the endangerment which exists; participate in the

19  pollution site investigation and clean up; pay the costs and expenses incurred by

20  Plaintiff in connection with the Impacted Site to date; obtain payment for

21  environmental consulting costs for Site assessment to date; and, obtain payment of

22  attorneys' fees pursuant to 42 U.S.C. § 6972(a)(1)(B).

23        36.     As a matter of law, Defendants are strictly liable for all costs and

24  expenses resulting from the releases or discharges of the Hazardous Wastes at the

25  FACILITY.  As a matter of law, there is an identifiable period of time during which

26  pollution of the FACILITY by Defendants occurred. Plaintiff, when permitted by law,

27  has or will join as Defendants all persons who operated the Impacted Site during the

28  time which the pollution occurred; Plaintiff is entitled to prosecute this claim as a

Private Attorney General. As a result, Defendants are jointly and severally liable for conducting all necessary Site assessment and/or remediation of releases or discharges of the Hazardous Wastes at the FACILITY relating to the areas of pollution caused by one or more Defendants.

37.     Further, as a result of Defendants' disposal of the Hazardous Wastes on the FACILITY, Plaintiff as owner of the FACILITY has incurred environmental consulting costs to identify and characterize the nature and extent of the pollution caused by Defendants and each of their respective releases or disposals of Hazardous Wastes at the FACILITY.

38.     The regulated Hazardous Wastes described above have actually seeped into the soils and/or ground water at the FACILITY and polluted the Impacted Site. The Hazardous Wastes released by Defendants' daily cause ongoing direct and actual harm to The Impacted Site for which remedial and preventative measures must be taken.  As a direct and proximate result of Defendants and each of their releases and disposals of Hazardous Wastes at the FACILITY, Plaintiff has been damaged and caused to incur environmental agency oversight costs in a sum not yet fully ascertained, and to be proved at the time of trial.  Based on the foregoing, Plaintiff is entitled to and hereby demands reimbursement from each Defendant for all of the costs necessary to respond to Defendants' pollution and each of their releases or disposals of Hazardous Wastes which have injured and continue to injure the Impacted Site; Private Attorney General attorneys' fees; and, injunctive relief compelling their implementation of remedial action.

**SECOND CLAIM FOR RELIEF**

**(Recovery Pursuant to the HWCL**

**Against All DEFENDANTS)**

39.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 38, inclusive and incorporates them by reference as though fully set forth.

40.     The Hazardous Substances Accounts Act ("HSAA") provides

1   Defendants are "Persons" as defined by California Health and Safety Code §§ 25319.

2       41.     The HSAA provides Defendants are "Responsible Parties" as defined
3   by California Health and Safety Code § 25323.5 and CERCLA 42 U.S.C.
4   §§ 9607(a)(1), 9607(a)(2) and 9607(a)(4).

5       42.     The California Hazardous Waste Control Law ("HWCL"), (Health &
6   Safety Code §§25100 et seq.) provides that Plaintiff may recover from Defendant
7   Responsible Persons under the HSAA for its removal and/or remedial action costs
8   incurred or to be incurred to remove and/or remedy the alleged releases or threatened
9   releases of Hazardous Wastes  at the Impacted Site.

10      43.     Plaintiff alleges Defendants have released Hazardous Wastes at the
11  Impacted Site, and/or have equitably and/or contractually assumed liability for such
12  releases, within the meaning of California Health and Safety Code §§ 25320-25321.

13      44.     Plaintiff alleges it has incurred, and will continue to incur, costs to
14  perform "removal" and/or "remedial" actions to respond to the Hazardous Substances
15  and Hazardous Wastes released by Defendants, and/or to respond to releases that
16  Defendants have equitably and/or contractually assumed liability for, at the Impacted
17  Site within the meaning of California Health & Safety Code §§ 25322-25323 and
18  comparable sections of the HWCL.

19      45.     Plaintiff is informed and believes and thereon alleges Defendants also
20  violated: California Civil Code §§ 3479, 3480 and 3481; RCRA, 42 U.S.C. § 6972, et
21  seq.; California Water Code (Dickey Act (Water Code §13010, et seq., repealed 1969);
22  Porter-Cologne Act (Water Code § 13020, et seq.), by causing and/or permitting the
23  discharge or release of the Hazardous Substances and/or Hazardous Wastes into the
24  environment; California Water Code § 13304(a) (which provides that "[a] person who
25  has discharged or discharges waste into the waters of this state . . . and creates . . . a
26  condition of pollution or nuisance"),  § 13050 (m)(1), 13265(c) and (d); and 13350(b);
27  and, California Fish & Game Code § 2560. These resulted in violations of law which
28  in turn support liability under Plaintiff's HSAA claim.

46.     Plaintiff alleges Defendants are Responsible Parties and therefore Plaintiff is entitled to recovery from Defendants pursuant to the HWCL, including but not limited to all present and future costs of pollution investigation, remediation and attorneys' fees.

### THIRD CLAIM FOR RELIEF

### (For Continuing Public Nuisance against All Defendants)

47.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 46, inclusive, and incorporates them by reference as though fully set forth.

48.     Defendants, and each of them, were the only persons and/or entities that owned and/or performed operations and/or handled Hazardous Substances and/or Hazardous Wastes on or near the FACILITY.  Defendants owned and/or operated the FACILITY during the period at least 1971 through present.  Defendants' pollutant releases could not, and likely would not, have occurred but for Defendants' negligent conduct.

49.     At all material times, Defendants have allowed and permitted Hazardous Substances and/or Hazardous Wastes from the Impacted Site to leak and migrate onto and into the soil, soil vapor and groundwater adjacent to and underlying the Impacted Site. The pollutants released by Defendants are carcinogenic and highly toxic to plant, animal and human life.   The pollutants potentially create a health risk to Site workers and/or neighboring properties in the event workers occupy indoor air spaces or perform soil excavation to further develop the Impacted Site and neighboring sites. Furthermore, the vertical and horizontal migration of the pollutants released by Defendants potentially endangers the drinking water supply of the general public. Hazardous vapors may also seep from the subsurface into the air space within the structures on the Impacted Site or into the air space of off-site structures to cause imminent impacts to the ambient air at concentrations potentially harmful to human health.  Defendants' failure and/or refusal to take corrective action while the pollution continues to spread puts the public at risk.

50.   Defendants' failure and/or refusal to abate the nuisance before the pollution further spreads puts a large number of the public at risk.   In addition, Defendants' actions potentially affect the entire community or neighborhood, or, at a minimum, a considerable number of persons.

51.   The former ownership, use and operation of the Impacted Site by Defendants constitutes a nuisance within the meaning of California Civil Code §§ 3479 and 3480.   Defendants' actions are injurious to Plaintiff's economic interests in the Impacted Site and interfere with Plaintiff's comfortable and quiet use and enjoyment of the Impacted Site. In addition, Defendants' pollution acts potentially affect an entire community or neighborhood, or, at a minimum, a considerable number of persons.

52.   Plaintiff has given notice to Defendants, and each of them, of the damage caused by the pollution nuisance, and requested its abatement.   However, Defendants, and each of them, have failed and/or refused, and continue to fail and/or refuse, to abate the pollution nuisance.

53.   Defendants, and each of them, have threatened to and will, unless restrained by this court, continue to maintain the pollution nuisance and continue the acts complained of.   Each and every of Defendants' pollution nuisance acts have been, and will be, without Plaintiff's consent, against Plaintiff's will, and in violation of Plaintiff's right of quiet use and enjoyment of the Impacted Site.

54.   As a proximate result of the continuing pollution nuisance caused and maintained by the Defendants, Plaintiff has suffered: a substantial reduction in the monetary value and marketability of the Impacted Site; potential lost rental income; an impaired ability to pledge the Impacted Site as security for either operating lines of credit or capital improvement loans; an impaired ability to obtain loans or financing; the requirement of employing environmental to assess and potentially remediate the FACILITY and to incur costs related thereto; potential exposure to lawsuits due to exposures from workers at the Impacted Site and/or workers exposed to Hazardous Substances and Hazardous Wastes that have migrated off-site;  and, the need to employ

1  legal counsel and incur legal costs and attorneys' fees.

2      55.    As a further proximate result of the continuing abatable pollution nuisance

3  created by Defendants, and each of them, Plaintiff is informed and believes it will be

4  injured and sustain damages by reason of its inability to freely use, occupy, rent,

5  refinance, pledge, hypothecate, secure, or sell the Impacted Site.

6      56.    The pollution nuisance is continuing in nature and with implementation of

7  reasonable remedial measures can be abated.

8                        **<u>FOURTH CLAIM FOR RELIEF</u>**

9                **(For Continuing Private Nuisance against All Defendants)**

10     57.  Plaintiff repeats and realleges the allegations contained in Paragraphs 1

11  through 56, inclusive, and incorporates them by reference as though fully set forth.

12     58.  Defendants, and each of them, were the only persons or entities that owned

13  and/or performed operations and/or handled Hazardous Substances and/or Hazardous

14  Wastes on or near the FACILITY for the period at least 1971 through present.

15  Defendants caused the type of pollution which exists on the FACILITY. The pollutant

16  releases could not, and likely would not, have occurred but for Defendants' negligent

17  conduct.

18     59.  At all material times, Defendants have allowed and permitted Hazardous

19  Substances and/or Hazardous Wastes from the Impacted Site to leak into the soil, soil

20  vapor and groundwater adjacent to and underlying the Impacted Site. The pollutants

21  released are carcinogenic and are highly toxic to plant, animal and human life.

22  Furthermore, the presence of the pollution at the Impacted Site interferes with

23  Plaintiff's quiet use and enjoyment of the Impacted Site.  Furthermore, Plaintiff is

24  prevented from making full use of its real estate investment to obtain more favorable

25  refinancing of existing loans and/or financing of new loans on the Impacted Site.

26  Finally, Plaintiff may lose opportunities to sell or rent the Impacted Site to prospective

27  buyers or tenants who do not wish to perform operations at the Impacted Site which is

28  polluted, and which potentially poses increased worker safety risks and for which the

1    REGIONAL BOARD has issued a Responsible Party Letter.

2        60.   The ownership, use and maintenance of the Impacted Site by Defendants

3    constitutes a nuisance within the meaning of § 3479 and § 3481 of the California Civil

4    Code because it is injurious to Plaintiff's economic interests in the Impacted Site and

5    interferes with the comfortable and quiet use and enjoyment of the Impacted Site.

6        61.   Plaintiff has given notice to Defendants, and each of them, of the damage

7    caused by the pollution nuisance, and requested its abatement, but Defendants, and

8    each of them, have failed and/or refused, and continue to fail and/or refuse, to abate the

9    pollution nuisance.

10       62.   Defendants, and each of them, have threatened to and will, unless restrained

11   by this court, continue to maintain the pollution nuisance and continue the acts

12   complained of.  Each and every pollution nuisance act has been, and will be, without

13   Plaintiff's consent, against Plaintiff's will, and in violation of Plaintiff's right of quiet

14   use and enjoyment of the Impacted Site.

15       63.   As a proximate result of the continuing pollution nuisance caused and

16   maintained by the Defendants, Plaintiff has suffered: a substantial reduction in the

17   monetary value and marketability of the Impacted Site;  lost rental income; an impaired

18   ability to pledge the Impacted Site as security for either operating lines of credit or

19   capital improvement loans;  impaired ability to obtain loans or financing;  the

20   requirement of employing environmental consultants to assess and potentially

21   remediate pollution at the FACILITY, and to incur costs related thereto; exposure to

22   potential lawsuit; and, the need to employ legal counsel and incur legal costs and

23   attorneys' fees.

24       64.   As a further proximate result of the continuing abatable pollution nuisance

25   created by Defendants, and each of them, Plaintiff is informed and believes it will be

26   injured and sustain damages by reason of its inability to freely use, occupy, rent,

27   refinance, pledge, hypothecate, secure, or sell the Impacted Site.

28       65.   The pollution nuisance is continuing in nature and with implementation of

1  reasonable remedial measures can be abated.

2  **FIFTH CLAIM FOR RELIEF**

3  **(For Continuing Nuisance Per Se against All Defendants)**

4  66.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1

5  through 65, inclusive, and incorporates them by reference as though fully set forth.

6  67.    Defendants, and each of them, were the only persons or entities that

7  owned and/or performed operations and/or handled Hazardous Substances and/or

8  Hazardous Wastes on or near the FACILITY during the period at least 1971 through

9  present.  Defendants caused the type of pollution which exists at the FACILITY. The

10 pollutant releases could not, and likely would not, have occurred but for Defendants'

11 negligent conduct.

12 68.    At all material times, Defendants have allowed and permitted Hazardous

13 Substances and/or Hazardous Wastes from the Impacted Site to leak and migrate onto

14 and into the soil, soil vapor and groundwater adjacent to and underlying the Impacted

15 Site. The pollutants released are carcinogenic and are highly toxic to plant, animal and

16 human life.  Furthermore, the presence of the pollution at the Impacted Site interferes

17 with Plaintiff's free use and enjoyment of the Impacted Site.  Plaintiff is prevented

18 from making full use of its real estate investment to obtain more favorable refinancing

19 of existing loans and/or financing of new loans on the Impacted Site.  Finally, Plaintiff

20 may lose opportunities to sell or rent the Impacted Site to prospective buyers or tenants

21 who do not wish to be involved with the Impacted Site because it is polluted.

22 69.    The Hazardous Substances and Hazardous Wastes released also create a

23 health risk to residents and workers on the Impacted Site and/or neighboring properties

24 in the event they occupy indoor air spaces.  Furthermore, the vertical and horizontal

25 migration of the pollutants released by Defendants potentially endangers the drinking

26 water supply of the general public.  This danger is evidenced by the fact that the

27 pollutants at the Impacted Site may have migrated off the Impacted Site.  The

28 pollutants may have migrated through the soil and soil vapors at the Impacted Site and

onto off-site properties to become a potential threat to human health because of the accumulation of harmful vapors in adjoining buildings.  Defendants' failure and/or refusal to abate the nuisance before the pollution spreads further puts a large number of the public at risk.  Plaintiff is informed and believes and thereon alleges Defendants, and each of them, in breaching their duty of care, violated certain statutes, ordinances, and/or regulations of a public entity.

70.   Plaintiff is informed and believes and thereon alleges Defendants violated RCRA, 42 U.S.C. § 6972, et seq., by causing and/or permitting the discharge or release of Hazardous Substances and/or Hazardous Wastes into the environment.

71.   Plaintiff is informed and believes and thereon alleges Defendants also violated the: California Hazardous Substance Account Act (Health & Safety Code § 25300 et seq.); Hazardous Waste Control Law (Health & Safety Code § 25100 et seq.);  California Water Code (Dickey Act (Water Code § 13010, et seq., repealed 1969); Porter-Cologne Act (Water Code § 13020, et seq.); by causing and/or permitting the discharge or release of the Hazardous Substances and/or  Hazardous Wastes into the environment; Proposition 65 - Safe Drinking Water and Toxic Enforcement Act of 1986,; California Health and Safety Code § 25249.5, et seq.; California Health and Safety Code § 25299(a), (b), and (c), and 25189(d); California Water Code § 13050 (m)(1), 13265(c) and (d); and 13350(b); and, California Fish & Game Code § 2560.

72.   The Defendants have discharged carcinogenic Petroleum Wastes, and the Dry Cleaning Defendants have discharged Dry Cleaning Wastes, each into the waters of the state which have: (1) created a condition of pollution, or a nuisance as is defined by Water Code Section 13050(m).  Plaintiffs allege either the creation of the condition of pollution, or excessive cancer exposure, or the creation of the condition of the nuisance, is sufficient to demonstrate a violation of Water Section 13304(a) as to all Defendants.   As to the creation of the condition of nuisance, the discharge of carcinogens which have created a condition of nuisance because each of those waste

discharges are: (1) injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property (as demonstrated by the presence of carcinogenic benzene concentrations in groundwater on the Impacted Site at concentrations much greater than the State MCL and/or cleanup goal, and by increased costs and risks caused by the Petroleum Wastes when Plaintiff is required to remediate the Petroleum Wastes; (2) Affects at the same time a considerable number of persons, although the extent of the annoyance or damage inflicted upon Plaintiff is unequal to those other persons affected (as demonstrated by the potential impacts to numerous of the Impacted Site's tenants' employees and visitors, and potential impacts to downstream property owners and tenants in the event the Defendants' carcinogenic Petroleum Releases are allowed to flow unimpeded off the Impacted Site; and (3) Occurs during, or as a result of, the treatment or disposal of each of their wastes (as demonstrated by the Defendants' improper disposal of the carcinogenic Petroleum Wastes from their underground storage tank system, and by their failure to properly remediate and treat the carcinogenic wastes once they disposed of them into the groundwater, thereby allowing them to flow unimpeded onto and potentially off of the Impacted Site).

73.     As a proximate result of Defendants' statutory violations in connection with the ownership and/or operation of the FACILITY, and the leakage of hazardous and regulated substances and/or wastes into the soil and groundwater on the Impacted Site, Plaintiff has been caused damages and has suffered: exposure of residents to carcinogenic substances; a substantial reduction in the monetary value and marketability of the Impacted Site; an impaired ability to pledge the Impacted Site as security for either operating lines of credit or capital improvement loans; an impaired ability to obtain loans or financing; the requirement of employing environmental consultants to assess and remediate the FACILITY, and to incur costs related thereto; and, the need to employ legal counsel and incur legal costs and attorneys' fees.

74.     Plaintiff's injuries have resulted from an occurrence the nature of which

the statutes, ordinances, and/or regulations specifically referred to herein were designed to prevent.

75.     Plaintiff is a member of that class of persons for whose protection the statutes, ordinances, and/or regulations more specifically referred to herein were adopted to protect.

76.     Defendants' violations of those statutes, ordinances, and/or regulations are unjustified and inexcusable because Defendants possessed the wherewithal to prevent the pollutant releases or discharges, or, once detected, to promptly and effectively remedy them so as to prevent prolonged exposure and injury to the environment.  The pollution nuisance is continuing in nature and with implementation of reasonable remedial measures can be abated.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract/Lease

### Against Defendants Against Bay Area/Diablo Defendants)

77.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 76, inclusive, and incorporates them by reference as though fully set forth.

78.     In or about April of 2007 a lease agreement ("Lease") was entered into by and between Plaintiff and Bay Area/Diablo Defendants.  The Lease provided that the lessor was to lease the premises located at the Impacted Site to the lessee.  Pursuant to the terms of the Lease, Bay Area/Diablo Defendants agreed to certain legal obligations as described below.

79.     In addition to the Lease provisions alleged above in Paragraph 22, Plaintiff alleges the following specific Sections of the Lease have been violated Bay Area/Diablo Defendants relating to releases of Hazardous Substances or Hazardous Wastes at the Impacted Site:

> Section 4.2. Compliance with Laws: "Tenant shall at all times keep and maintain the Premises in compliance with all applicable laws, ordinances, statutes, rules, regulations, orders, directions and requirements of all

federal, state, county and municipal governments and of all other governmental agencies or authorities having or claiming jurisdiction over the Premises or the business activities conducted thereon or therein and all of their respective departments, bureaus, agencies, or officers ( collectively, "Applicable Laws") .... "

Section 4.4(b). Environmental Compliance: "Tenant's failure to respond or take action after a Material Release1 as otherwise required in this Lease shall be a default hereunder."

Section 4.4(c). Tenant's Responsibility for Hazardous Materials: "Hazardous Materials at the Premises shall be the responsibility of Tenant and Tenant shall be liable for and responsible for such Hazardous Materials, including without limitation, at Tenant's sole cost (i) any Pre-Existing Environmental Condition3 ; (ii) permitting, reporting, assessment, testing, investigation, treatment, removal, remediation, transportation and disposal of Hazardous Materials, as directed by any governmental agency, as required by Environmental Laws; (iii) damages, costs, expenditures, and claims for injury to persons, property, the Premises, and surrounding air, land, surface water, and ground water resulting from such Hazardous Materials; (iv) claims by any governmental agency ... associated with injury to surrounding air, land, surface water and ground water or other damage resulting from such Hazardous Materials ... ; (vi) fines, costs, fees, assessments, taxes, demands, orders, directives or any other requirements imposed in any manner by any governmental agency asserting jurisdiction, or under any Environmental Laws with respect to such Hazardous Materials; (vii) damages, costs and expenditures for injury to natural resources to the extent caused by such Hazardous Materials as directed by any governmental agency or otherwise as required by Applicable Laws, including Environmental Laws; (viii) compliance with Environmental Laws regarding the use, storage, transportation, release, disposal, dispensing or sale of Hazardous Materials; and (ix) any other liability or obligation related to Hazardous Materials... [unless] caused by the negligence or willful misconduct of Landlord or its agents. Except as otherwise provided in Section 4.5(f) below, Landlord is not required to incur any costs, fees (including attorneys', consultants' and/or expert witness fees) or expenses for environmental compliance, testing, investigation, assessment, remediation or cleanup relating to Hazardous Materials, should Landlord incur any such reasonable costs, expenses or fees relating to Hazardous Materials at the Premises or surrounding lands

or surface water or ground water, Tenant shall promptly reimburse Landlord for said costs, expenses or fees ... "

Section 4.4(d). Tenant's Environmental Indemnification: "Tenant hereby agrees to indemnify, defend, and hold Landlord harmless from any and all actions, causes of action, claims, costs, damages ... , demands, expenses ... , fines, injunctions, judgments, liabilities, liens, losses, obligations, penalties, proceedings or suits ( collectively, "Claims") which arise before or during the term of the Lease as a result of Hazardous Materials.. . . This indemnification of Landlord by Tenant includes, without limitation, costs incurred in connection with any investigation or site conditions or any cleanup, remedial, removal, or restoration work required by any federal, state, or local governmental agency or political  subdivision because of Hazardous Materials present in the soil or ground water on or under the Premises ... if the presence of any Hazardous Materials on the Premises result in any contamination of the Premises, Tenant shall promptly take all actions at its sole expense as are recommended by environmental consultants hired by Tenant and are necessary to return the Premises to the condition required by the appropriate governmental authority ... "

Section 17 .2. Indemnification of Landlord: " ... Tenant hereby agrees to indemnify, defend and save and hold Landlord harmless from and against any and all Claims of every kind or nature ... incurred by Landlord, arising directly or indirectly from or out of (i) any failure by Tenant to perform any of the terms, provisions, covenants or conditions of this Lease on Tenant's part to be performed ... (iv) any failure of Tenant to comply with any Applicable Laws of any governmental authority ... Tenant's indemnity obligations under this Article and elsewhere in this Lease arising prior to the expiration or earlier termination of this Lease shall survive any such expiration or termination ... "

Section 17.3. Notice of Claim/Notice of Environmental Matters: "Tenant shall promptly notify Landlord of any Claim involving the Premises, which is instituted or threatened against Tenant or Landlord of which Tenant receives notices or of which Tenant acquires knowledge. In the event Landlord is made a party to any Claim against which Tenant has indemnified Landlord, as aforesaid, Tenant shall defend Landlord, pay all costs and shall provide effective counsel to Landlord in such litigation or, at Landlord's option, shall pay all reasonable attorneys' fees and costs incurred by Landlord in connection with its own defense
or settlement of said litigation."

80.     During the period 2007 through the present Bay Area/Diablo Defendants breached the Lease respectively by committing waste on the Impacted Site, and causing or permitting releases of Hazardous Substances and/or Hazardous Wastes into the soil and groundwater underlying the Impacted Site from the Site's dispensers and/or underground storage tank system, and by not remediating pre-existing pollution as required under the Lease.  As enumerated and alleged above, those releases and discharges are in violation of RCRA, the California Health & Safety Code, Water Code, Nuisance Code and Fish and Game Code, and as such constitute a breach of the Lease.

81.     On numerous occasions, Plaintiff notified Bay Area/Diablo Defendants of its breaches.  This included the September 27, 2018 RCRA Notice issued to such Defendants, and the May 7, 2019 30 Day Notice to Cure issued to Defendants.  Bay Area/Diablo has failed and refused to respond to these notices, nor has it cured its breaches.

82.     Plaintiff has performed all obligations it owes to Bay Area/Diablo Defendants except those obligations Plaintiff was prevented or excused from performing.

83.     As a proximate result of Bay Area/Diablo Defendants' breaches of their respective leasehold obligations in connection with the operation of the Site and the leakage of hazardous substances and wastes into the soil and groundwater on the Site, Plaintiff has been caused damages and has suffered: a substantial reduction in the monetary value and marketability of the Impacted Site due to the Regional Board's issuance of a Responsible Party Letter; lost rental income; an impaired ability to pledge the Site as security for either operating lines of credit or capital improvement loans; an impaired ability to obtain loans or financing; a lost business opportunity to sell the Impacted Site, a potential forfeiture of the Impacted Site due to the inability to sell the Impacted Site before an existing loan on the Impacted Site is due; lost profits relating to investment returns that would have been earned through the reinvestment of profits

from the sale of the Impacted Site, which was improperly prevented in 2018 by Bay Area/Diablo Defendants' actions; the requirement of employing environmental consultants to assess and remediate the Site after the Regional Board's issuance of the Responsible Party Letter, and to incur costs related thereto; and the need to employ legal counsel and incur legal costs and attorneys' fees to defend against actions initiated by the Regional Board and to pursue Bay Area/Diablo Defendants in this action.

84.     Plaintiff alleges it did not become aware of the wrongful actions engaged in by Defendants until at least March of 2018, and that the Bay Area/Diablo Defendants actively concealed facts that potentially could have provided Plaintiff with notice of such actions.  Furthermore, Plaintiff alleges that Defendants' continued improper actions caused a continuous accrual of Plaintiff's breach of contract action.

## SEVENTH CAUSE OF ACTION

### (For Negligent Interference with Prospective Business Advantage
### Against Bay Area/Diablo Defendants)

85.     Plaintiff refers to the allegations contained in paragraphs 1 through 84 inclusive, and incorporates them by reference as though fully set forth herein.

86.     The Bay Area/Diablo Defendants had a common law and statutory duty to exercise reasonable care in determining the presence of pollution on the Impacted Site before selling the Impacted Site to Plaintiff, to prevent pollution from being released both before and after the sale of the Impacted Site, and to prevent interference with existing business dealings and relationships of Plaintiff regarding potential uses of the Impacted Site.

87.     The Bay Area/Diablo Defendants were aware or should have been aware that if they did not act with due care, their actions would interfere with the numerous and varied prospective business relationships of Plaintiff.

88.     The Bay Area/Diablo Defendants breached their duty of care by withholding information from Plaintiff about releases of pollution at the Impacted Site, both before and after Plaintiff's purchase of the Impacted Site, refusing to take

1   responsibility for the pollution present on the Impacted Site, improperly interfering

2   with and ultimately impeding Plaintiff's ability to sell the Impacted Site.

3       89.     These improper actions in turn impacted loans obtained by Plaintiff where

4   the Impacted Site was used as security, thereby causing a significant decrease in

5   Plaintiff's earnings from its ownership of the Impacted Site, and potentially causing

6   Plaintiff to lose all ownership interest in the Impacted Site.

7       90.     The Bay Area/Diablo Defendants' actions as described above were so

8   substantial in nature that they endanger Plaintiff's ownership interest and deprive

9   Plaintiffs of the possession of the Impacted Site.

10      91.     Based upon statutory law, and the specific terms of the Lease, Plaintiff

11  reasonably believed that Bay Area/Diablo Defendants, and each of them, would

12  properly undertake all obligations to properly investigate and remediate pollution

13  present on the Impacted Site, including both pollution released during the Lease, and

14  pollution released prior to Plaintiff's purchase of the Impacted Site.   The decrease in

15  Plaintiff's potential revenue generated from the sale of the Impacted Site, and the

16  interference with numerous of Plaintiff's business dealings, would not have occurred

17  but for Defendants' negligent conduct.

18      92.     As a proximate result of the Defendants' negligence Plaintiff has suffered:

19  (1) a substantial reduction in earnings that would have resulted from the sale of the

20  Impacted Site that was ultimately prevented by Defendants' actions; (2) unnecessary

21  exposure to numerous lawsuits from regulatory agencies directing Plaintiff to

22  investigate and remediate the Impacted Site, and potentially financial institutions that

23  have loaned funds to Plaintiff and ultimately may institute foreclosure proceedings if

24  Plaintiff is unable to comply with the terms of the loan because of its inability to raise

25  funds from the sale of the Impacted Site; (3) potential loss of ownership of the

26  Impacted Site; and (4) the need to employ legal counsel and incur legal costs and

27  attorney's fees.

28      93.     Plaintiff alleges it did not become aware of the wrongful actions engaged

in by Defendants until March of 2018, and that the Bay Area/Diablo Defendants actively concealed facts that potentially could have put Plaintiff on notice of such actions. Furthermore, Plaintiff alleges that Defendants' improper actions caused a continuous accrual of Plaintiff's cause of action.

## EIGHTH CAUSE OF ACTION

**(For Intentional Interference with Prospective Business**

**Advantage Against Bay Area/Diablo Defendants)**

94.     Plaintiff refers to the allegations contained in paragraphs 1 through 93 inclusive, and incorporates them by reference as though fully set forth herein.

95.     The Defendants had a common law and statutory duty to exercise reasonable care in determining the presence of pollution on the Impacted Site before selling the Impacted Site to Plaintiff, to prevent pollution from being released both before and after the sale of the Impacted Site, and to prevent interference with existing business dealings and relationships of Plaintiff regarding potential uses of the Impacted Site.

96.     The Bay Area/Diablo Defendants were aware that if they did not act with due care, their actions would interfere with the numerous and varied prospective business relationships of Plaintiff.

97.     The Bay Area/Diablo Defendants breached their duty of care by intentionally withholding information from Plaintiff about releases of pollution at the Impacted Site, both before and after Plaintiff's purchase of the Impacted Site, intentionally refusing to take responsibility for the pollution present on the Impacted Site, intentionally improperly interfering with and ultimately impeding Plaintiff's ability to sell the Impacted Site.

98.     These improper actions in turn impacting loans taken by Plaintiff where the Impacted Site was used as security, thereby causing a significant decrease in Plaintiff's earnings from its ownership of the Impacted Site, and potentially causing Plaintiff to lose all ownership interest in the Impacted Site.

99.     The Bay Area/Diablo Defendants actions as described above were so substantial in nature that they endanger Plaintiff's ownership interest and deprive Plaintiffs of the possession of the Impacted Site.

100.     Based upon statutory law, and the specific terms of the Lease, Plaintiff reasonably believed that Defendants, and each of them, would properly undertake all obligations to properly investigate and remediate pollution present on the Impacted Site, including both pollution released during the Lease, and pollution was released prior to Plaintiff's purchase of the Impacted Site.  The decrease in Plaintiff's potential revenue generated from the sale of the Impacted Site, and the interference with numerous of Plaintiff's business dealings, would not have occurred but for Defendants' intentional conduct.

101.     As a proximate result of the Defendants' negligence Plaintiff has suffered: (1) a substantial reduction in earnings that would have resulted from the sale of the Impacted Site that was ultimately prevented by Defendants' actions; (2) unnecessary exposure to numerous lawsuits from regulatory agencies directing Plaintiff to investigate and remediate the Impacted Site, and potentially financial institutions that have loaned funds to Plaintiff and ultimately may institute foreclosure proceedings if Plaintiff is unable to comply with the terms of the loan because of its inability to raise funds from the sale of the Impacted Site; (3) potential loss of ownership of the Impacted Site; and (4) the need to employ legal counsel and incur legal costs and attorney's fees.

102.     The Bay Area/Diablo Defendants' acts alleged above were willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages.

## **NINTH CAUSE OF ACTION**

### **(Violations Of Business And Professions Code § 17200 (Unfair Competition) Against Bay Area/Diablo Defendants)**

103.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 102

1 | above, as though they are set forth in full herein.

2 |     104.   Beginning by at least 2007, Bay Area/Diablo Defendants engaged in
3 | actions which constitute unfair business competition as defined in California Business
4 | and Professions Code § 17200.  These violations include violation of each of the
5 | statutes included in this Complaint, in addition to statutes precluding the engagement
6 | of fraud and deceit, including but not limited to Civ. Code §§1572, 1573, 1709 and
7 | 1710.

8 |     105.   During the course of negotiation of the purchase of the Impacted Site Bay
9 | Area/Diablo Defendants' acts and practices of unfair competition included the
10 | fraudulent acts and activities state above. Furthermore, Plaintiffs allege these facts,
11 | combined with other actions taken by Bay Area/Diablo Defendants (where such
12 | defendants refused to comply with governmental orders directing them to investigate
13 | and remediate pollution released by them on other sites), demonstrates a pattern and
14 | practice of improper activities engaged in by such Defendants for the purpose of
15 | inducing Plaintiff to purchase the Impacted Site, and/or avoiding their duties to
16 | remediate the pollution present on the Impacted Site.

17 |     106.   By committing the acts as alleged above, Bay Area/Diablo Defendants
18 | engaged in an unlawful practice and acts constituting unfair competition within the
19 | meaning of Business and Professions Code Sections 17200 et seq.  Plaintiff alleges the
20 | following constitute actionable Section 17200 violations:  (1) Defendants'
21 | misrepresentations and concealment of facts during the negotiations of the Purchase of
22 | the Impacted Site; (2) Defendants' misrepresentation of facts to the Regional Board
23 | concerning the source of contamination present at the Impacted Site (which ultimately
24 | resulted in a denial of the ability to access funds available from the Regional Board to
25 | investigate and remediate the Impacted Site); (3) Defendants' continued failure to
26 | inform Plaintiff of ongoing enforcement actions by the Regional Board during the Bay
27 | Area/Diablo Defendants' tenancy; and (4) Defendants' continued refusal to comply
28 | with Regional Board directives to investigate and remediate the pollution on the

32718

-29-

Complaint

Impacted Site.  These improper actions ultimately allowed the Bay Area/Diablo Defendants to continue occupation of the Impacted Site and to profit from operations performed at the Impacted Site.

107.   As a direct and proximate result of each Bay Area/Diablo Defendants' conduct, as set forth herein, these defendants have received ill-gotten gains, including, but not limited to: (1)  proceeds from the sale of the Impacted Site; (2) income from continued operations at the Impacted Site; (3) payment by Plaintiff of investigation and remediation fees which were the legal obligation of those defendants to incur; and, (4) avoidance of those Defendants' regulatory agency duties to remediate the Impacted Site. In addition, Plaintiff is entitled to statutory penalties associated with each separate violation of the statute.

108.   Plaintiff alleges it did not become aware of the wrongful actions engaged in by Defendants until at least March of 2018, and that the Bay Area/Diablo Defendants actively concealed facts that potentially could provide Plaintiff with notice of such actions.  Furthermore, Plaintiff alleges that Defendants' continued improper actions caused a continuous accrual of Plaintiff's cause of action.

## TENTH CAUSE OF ACTION

### (Statutory Failure to Disclose - Violations of Health And Safety Code § 25359.7 Against Bay Area/Diablo Defendants)

109.   Plaintiff realleges and incorporates by reference Paragraphs 1 through 108 above, as though they are set forth in full herein. ).

110.   Plaintiff alleges Health and Safety Code § 25359.7 "imposes liability on an owner of nonresidential real property who knows, or has reasonable cause to believe, that there is hazardous substance on or under the property and fails to notify a potential buyer…" (Health & Saf. Code, § 25359.7, subd. (a).)  Plaintiff alleges this is a strict liability statute.

111.   Plaintiff alleges the Bay Area/Diablo Defendants failed or refused to provide proper written notice to Plaintiff about the actual presence and impacts of

1  Hazardous Substances or Hazardous Waste contamination before Plaintiff purchased

2  the Impacted Site and executed the Sales Agreement.

3      112.   Plaintiff alleges that the disclosure requirements at issue in § 25359.7

4  reflect legislative judgments as to what information should be readily available for

5  commercial transactions and to market participants to consider when negotiating or

6  agreeing to a contract, even when one party could easily contract to secure that

7  information from the other party. Therefore, whether relevant information was or was

8  not available to Plaintiff through investigation at the time it executed the Lease (and all

9  subsequent executed contracts) does not obviate Defendants' violation of the

10  disclosure statute.

11      113.   Plaintiff further alleges § 25359.7 requires specific written notice, and that

12  Bay Area/Diablo Defendants' failure to provide such written notice subjects them "to

13  actual damages and any other remedies provided by law."

14      114.   Plaintiff alleges had the necessary written disclosures been made to

15  Plaintiff as required by § 25359.7, it would not have purchased the Impacted Site.

16  Therefore, Bay Area/Diablo Defendants' failure to provide the proper written notice of

17  the presence of the pre-existing pollution breached the written disclosure requirements

18  of § 25359.7, and Plaintiff is entitled to recover all consequential damages associated

19  with the breach of the statute, in addition to penalties associated with each violation of

20  the statute.

21      115.   Plaintiff alleges it did not become aware of the wrongful actions engaged

22  in by Defendants until at least March of 2018, and that the Bay Area/Diablo

23  Defendants actively concealed facts that potentially could provide Plaintiff with notice

24  of such actions.  Furthermore, Plaintiff alleges that Defendants' continued improper

25  actions caused a continuous accrual of Plaintiff's cause of action.

26  / / /

27  / / /

28  / / /

**ELEVENTH CLAIM FOR RELIEF**

**(For Equitable Indemnity**

**Against All Defendants)**

116.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 115, inclusive, and incorporates them by reference as though fully set forth.

117.   The costs incurred by Plaintiff in investigating, and to be incurred in the future when abating the conditions at the Impacted Site are and will be the result of Defendants' improper conduct and/or management of hazardous substances and/or wastes and the conditions they have caused.

118.   Plaintiff is entitled to full, or at least partial, equitable indemnity from Defendants for all costs previously incurred, and all those costs which may be incurred by Plaintiff in the future testing for and abating the hazardous conditions at the Impacted Site in response to, and in defense of, the governmental agency environmental regulatory proceedings and Plaintiff in the actions alleged above and any future claims brought or threatened by adjacent property owners which have had their property contaminated as a result of Defendants' releases at the Impacted Site.

**TWELFTH CLAIM FOR RELIEF**

**(For State and Federal (28 U.S.C. § 2201(a) and 42 U.S.C. § 9613(g))**

**Declaratory Relief against All Defendants)**

119.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 118, inclusive, and incorporates them by reference as though fully set forth.

120.   An actual controversy has arisen and now exists between Plaintiff and Defendants in that Plaintiff contends, and Defendants and each of them deny, responsibility for the pollution, Hazardous Substances and/or Hazardous Wastes caused or permitted to be released into the environment at the FACILITY rests solely and entirely upon Defendants.

121.   Defendants, by reason of their ownership and operation of the FACILITY, each had exclusive possession, custody and control of the FACILITY

1  during the periods of the pollutant releases.

2      122.   In addition to Plaintiff's state law rights declaratory relief, Plaintiff seeks

3  federal declaratory relief under § 2201 of the Declaratory Judgment Act, 28 U.S.C.

4  § 1331, *et seq.* relating to all Federal statutory claims asserted and independently seeks

5  declaratory relief under RCRA.  Plaintiff therefore requests a judicial determination of

6  rights, and a declaration of the duties and obligations of the Defendants, in responding

7  to the alleged releases and threatened releases of Hazardous Substances and Hazardous

8  Wastes into the soil, soil gas, air, surface water and/or groundwater at and from the

9  Impacted Site.

10      123.   A dispute and controversy exists regarding:

11          (a)   Which persons and entities are responsible for causing pollution at

12  the FACILITY;

13          (b)   Which persons and entities are responsible for Site pollution

14  assessment and remediation of the FACILITY;

15          (c)   The time period in which FACILITY pollution remediation should

16  occur;

17          (d)   The appropriate means and costs for pollution remediation of the

18  FACILITY;

19          (e)   The scope of the pollution remediation of the FACILITY;

20          (f)   The exact nature and extent of Plaintiff's economic damages

21  incurred;

22          (g)   Which parties are responsible for payment of civil penalties (if

23  any); and,

24          (h)   Whether Plaintiff is entitled to recover attorneys' fees.

25      124.   Plaintiff believes additional issues will arise requiring judicial

26  determination as the litigation progresses. A judicial declaration is necessary and

27  appropriate at this time in order that Plaintiff may ascertain its rights and duties with

28  respect to Plaintiff's claims for damages.

1     **PRAYER FOR RELIEF**

2     WHEREFORE, PLAINTIFF prays of this Court as follows:

3     **ON THE FIRST CLAIM FOR RELIEF:**

4     1.     For issuance of an injunctive order directing Defendants to take action to

5     address the endangerment which exists from the pollution and compelling Defendants

6     to perform FACILITY pollution remediation and/or to pay the costs of FACILITY

7     pollution remediation implemented by Plaintiff in the future until such time as a "No

8     Further Action Is Required" letter for soil, soil vapor  and groundwater pollution is

9     issued by the governmental regulatory agency responsible for overseeing FACILITY

10    remediation;

11    2.     For issuance of an injunctive order directing Defendants to participate in

12    the site investigation and/or pay the costs of investigation implemented by Plaintiff in

13    the future until such time as a "No Further Action Is Required" letter for soil, soil

14    vapor and groundwater pollution is issued by the governmental regulatory agency

15    responsible for overseeing FACILITY remediation;

16    3.     For the costs, and Impacted Site pollution investigation related expenses,

17    incurred by Plaintiff in connection with the Impacted Site to date since issuance of

18    Plaintiff's Notice of Intent to Sue;

19    4.     For all environmental, analytical and expert response costs; and,

20    5.     For reasonable attorneys' fees as a Private Attorney General and all costs

21    and fees of litigation incurred.

22    **ON THE SECOND CLAIM FOR RELIEF:**

23    6.     For Plaintiff's Response Costs incurred, or to be incurred;

24    7.     For all other related costs incurred herein;

25    8.     For a declaration and/or determination Defendants are responsible for

26    paying to and/or reimbursing Plaintiff for all past and future costs to investigate and

27    remediate pollution at the Impacted Site incurred, or to be incurred; and,

28    9.     For attorneys' fees and costs relating to the investigation of responsible

1  parties for the Impacted Site.

2      **ON THE THIRD, FOURTH AND FIFTH, CLAIM FOR RELIEF:**

3      10.    For all costs of pollution investigation and remediation incurred within the

4  past three (3) years of filing this lawsuit;

5      11.    For all other related costs incurred herein within the relevant time period;

6      12.    For issuance of an injunctive order compelling Defendants to pay for

7  and/or to remediate pollution on the Impacted Site; and,

8      13.    For attorneys' fees and costs relating to the investigation of responsible

9  parties for the Impacted Site pursuant to California Code of Civil Procedure § 1021.5

10  and 1021.6 and as otherwise permitted by statute.

11      **ON THE SIXTH CLAIM FOR RELIEF:**

12      14.    For all Plaintiff's consequential damages including response costs,

13  consulting costs and related expenses as provide by contract, including lost profits, lost

14  business profit for the sale of the Impacted Site and/or reinvestment of the profits'

15  proceeds, response costs, consulting costs and related expenses as provide by contract;

16      15.    For attorneys' fees, costs and interest as provided for by agreement;

17      16.    For punitive and exemplary damages pursuant to all intentional acts; and,

18      17.    For express indemnity as provided for by agreement.

19      **ON THE SEVENTH AND EIGHTH CLAIM FOR RELIEF:**

20      18.    For all Plaintiff's consequential damages including lost profits, lost

21  business profit for the sale of the Impacted Site and/or reinvestment of the profits'

22  proceeds, response costs, consulting costs and related expenses as provide by contract;

23      19.    For attorneys' fees, costs and interest; and,

24      20.    For exemplary and punitive damages pursuant to all intentional acts and

25  causes of action.

26      **ON THE NINTH AND TENTH CLAIM FOR RELIEF:**

27      21.    Pursuant to California Business and Professional Code § 17203, that Bay

28  Area/Diablo Defendants, their successors, agents,  representatives, employees and all

persons who act in concert with Defendants be permanently enjoined from committing any acts of unfair competition, including each of the violations alleged in the Ninth and Tenth Causes of Action;

22.   Pursuant to California Business and Professions Code § 17206, Bay Area/Diablo Defendants be ordered to pay a civil penalty in the amount of Two Thousand Five Hundred Dollars ($2,500.00) for each violation of California Business and Professions Code § 17200 by Defendants as proven at trial;

23.   For all statutory penalties associated with each violation of Health and Safety Code §  25359.7;

24.   For restitution of all ill gotten gains by the Bay Area/Diablo Defendants, including but not limited to all funds paid by Plaintiff to the Bay Area/Diablo Defendants to purchase the Impacted Site;

25.   For all consequential damages, including lost profits, lost business profit for the sale of the Impacted Site and/or reinvestment of the profits' proceeds, response costs, consulting costs and related expenses as provide by contract;

26.   For punitive and exemplary damages pursuant to all intentional acts;

27.   For all damages recoverable under all other causes of action; and,

28.   For an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and 1021.6 and as otherwise permitted by statute.

## ON THE ELEVENTH CLAIM FOR RELIEF:

27.   For a determination Plaintiff is entitled to full, or at least partial, equitable indemnity from Defendants for all costs previously incurred, and all those costs which may be incurred by Plaintiff in the future testing for and abating the hazardous conditions at the Impacted Site in response to, and in defense of, the governmental agency environmental regulatory proceedings alleged above and any future claims brought or threatened by adjacent property owners which have had their property contaminated as a result of Defendants' releases at the Impacted Site; and,

28.   For an award of attorneys' fees pursuant to California Code of Civil

1  Procedure § 1021.5 and 1021.6 and as otherwise permitted by statute.

2  **ON THE TWELFTH CLAIM FOR RELIEF:**

3      29.    For a finding and declaration of the court concerning:

4          (a)    Which persons and entities are responsible for causing Plaintiff's

5  damages;

6          (b)    Which persons and entities are responsible for Impacted Site

7  pollution assessment and remediation;

8          (c)    The time period in which Impacted Site pollution remediation

9  should occur;

10          (d)    The appropriate means and costs for pollution remediation;

11          (e)    The scope of the pollution remediation;

12          (f)    The exact nature and extent of Plaintiff's economic and restitution

13  damages incurred;

14          (g)    Which parties are responsible for payment of civil penalties (if any)

15  as alleged by Plaintiff in the Complaint;

16          (h)    Whether punitive damages should be awarded; and,

17          (i)    Whether Plaintiff is entitled to recover attorneys' fees and costs

18  of litigation and interest.

19  **DEMAND FOR JURY TRIAL**

20      Plaintiff demands a trial by jury for all causes of action under which it is entitled

21  to a jury trial.

22  
23  DATED: July 8, 2020        BOIS & MACDONALD

24  

25          By:*/s/JAMES C. MACDONALD*

26          THOMAS J. BOIS, II

        JAMES C. MACDONALD

27          Attorneys for Plaintiff

        SLOW RIVER, LLC, a California Limited

28          Liability Company

32718

Complaint